## LAMSON CASH RY. CO. *v.* OSGOOD CASH CAR CO. and others.

*(Circuit Court, D. Massachusetts.* November 24, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—PRIOR INVENTION—SUFFICIENCY OF EVIDENCE—PATENT No. 295,172, FOR IMPROVEMENT IN CASH AND PARCEL CARRYING SYSTEM.

   In a suit for infringement of a patent, the defense being that defendant was the first inventor, the fact that soon after the time of his alleged invention he applied for a patent relating to the same subject, which he based on an entirely different principle, overcomes his and his witness' testimony, that he was the first inventor.

2. SAME—HAYDEN PATENT OF MAY 3, 1881, No. 241,008.

   The Hayden patent of May 3, 1881, No. 241,008, describing, among other things, an extensible holder, attached to a frame supported on wheels, the specification of which is as follows: "One of the principal difficulties in constructing a carrier of this character has been to adapt it to retain both large and small articles as well as articles of irregular shape,—a difficulty which I have overcome by connecting the holder, C, flexibly to the frame. I have adopted various modes of securing a flexible connection. For instance, I have used a crate or frame or basket, in connection with elastic straps, suspending it from the frame, A, or I have used a holder made of elastic straps. In either case the article, whether large or small, is pressed up against the frame by the elasticity of the holder,"—includes a holder extensibly connected to the frame as well as a holder extensible in itself.

In Equity.

*B. F. Thurston, M. B. Philipp,* and *E. C. Gilman,* for complainant.

*J. L. S. Roberts* and *Rodney Lund,* for defendants.

COLT, J. This suit is brought on letters patent No. 295,172, dated March 18, 1884, issued to Warren S. Hill, for improvement in cash and parcel carrying system; also on letters patent granted to Harris H. Hayden dated May 3, 1881, and numbered 241,008, for improvement in store service apparatus. Another Hayden patent, dated August 14, 1883, is included in the bill, but not pressed at the hearing. The defendants are charged with infringement of the first and third claims of the Hill patent, which are as follows:

(1) In a cash and parcel carrying system, a car provided with a pivoted hooked arm, held against a stop by a spring, and a buffer disposed axially on the wireway, consisting of a fixed part secured to the wire, and a yielding part moving against a spring, and having a retaining flange to engage with the pivoted hooked arm, substantially as set forth.

(3) In a cash-carrying car, the combination of the handle, $d^2$, made integral with the pivoted hooked arm, D, the stop, $d$, spring, $g$, and frame, $a^1$, substantially as shown and described.

Hill's improvement has special reference to mechanism employed to stop and retain the car when it has reached the end of its run. Great difficulty had previously been experienced in the construction of suitable mechanism to accomplish this. Hill's devices seem to have overcome this difficulty, and thus to have made the cash-carrying system a commercial success. These devices consist in providing the car with a pivoted hooked arm, held against a stop by a spring, and a buffer, consisting of a fixed part secured to the wire, and a yielding part moved against a spring, and having a flange to engage with the pivoted hooked arm. The first claim is for the combination of the pivoted hooked arm and the buffer, while the third claim relates specifically to the pivoted hooked arm. The defense relied upon is that Hill was not the first inventor of what is set forth in his patent, but that he surreptitiously obtained the patent for that which was invented by Edwin P. Osgood and Byron A. Osgood, assignors of the defendant company.

It appears that for several years previous to the Hill invention the Osgoods had been engaged in perfecting a cash-carrying system for use in stores. They made many efforts to construct suitable mechanism to stop and retain the car at the end of its route, which was the great obstacle to overcome to insure complete success. They used for a stop a piece of rubber through which the wire passed, but found the rebound of the car on striking was too great. Then they tried rubber attached to a spiral spring, with the same result. These were followed by various other devices,—such as the forked stop, curtain roller stop, pivoted spring lever catch stop, and the McGann stops. All these attempts at stopping and retaining the car, extending down to the time of Hill's invention, were in a greater or less degree failures. Hill conceived of his improvements in November, 1883. In August, 1883, B. A. Osgood writes to his agent in New York that they were doing all in their power to make their buffers or catches right. Under date of September 21, 1883, he again writes that the bunters

have been a great source of trouble on the new cars, that he had abandoned the rubber, and that he thought he had at last overcome the difficulty by the use of wooden bunters set in an iron socket which is attached to the wire. On November 12, 1883, E. P. Osgood filed his application for a patent for improvement in cash cars, in which we find a modification of the McGann stop.

With these general facts before us, it is highly improbable that the Osgoods, as they say, conceived of the Hill buffer and pivoted spring lever catch in the summer, or not later than September, 1883. Their great object was to discover just what Hill discovered, and, had they found it, why should B. A. Osgood write what he did to Porter, or why is no description of the invention found in the Osgood application of November 12th? B. A. Osgood first met Hill early in November, 1883, and he says he then described to him the buffer and spring lever found in Hill's patent. This Hill denies. Hill was a skilled mechanic and inventor, and Osgood went to him to construct some cash cars. Osgood showed him a pencil sketch of a cash car, and described the working of the apparatus. He also described a buffer for stopping the car, consisting of a rubber bulb, and a catch which was secured to the wire. He also showed him the McGann catch or stop. This is all consistent with the theory that Osgood was desirous of building cash cars after the patent for which he had just made application. Hill's investigations at this time led him to see the defects in the old forms of stops, and how they could be overcome, and these ideas he embodied in his patent. That Osgood suggested these improvements to Hill is almost as improbable as that he knew of them the previous September.

In addition to the testimony of the Osgoods, there is some evidence going to show that B. A. Osgood had previously conceived the idea of a buffer like that described in the Hill patent, and a catch fastened to the car provided with a handle to loosen it from the buffer. Frank O. Leonard, a pattern maker and an acquaintance of B. A. Osgood, draws a rough sketch, which he says is like a drawing shown him by B. A. Osgood in September, 1883, wherein is found a buffer substantially like Hill's, and a catch attached to the car, and provided with a handle to loosen it from the buffer. The original sketch is not produced by Leonard or Osgood. Luray C. Powers, another pattern maker, and an acquaintance of B. A. Osgood, produces a drawing which he says was made by him October 17 and 18, 1883, from instructions and sketches furnished by B. A. Osgood. The ink tracings on this drawing do not show any devices for stopping the car, and the drawing evidently was not originally intended to show any, but we find added, somewhat indistinctly drawn, pencil sketches of a buffer and a catch secured to the car. Powers says these pencil sketches were added after the ink tracings, and that Osgood himself about that time made a sketch of a buffer to assist him in understanding what he wished made. I cannot but regard these pencil sketches with

some degree of suspicion. Powers after this made drawings to be used in the patent-office in connection with Osgood's patent No. 290,190. If Osgood at this time had knowledge of this improvement, it is strange we do not find it described in these drawings. To my mind, the evidence of Leonard and Powers is not satisfactory, or of sufficient weight to overthrow the evidence for complainant, and so destroy the Hill patent. But, further than this, neither the Leonard nor the Powers drawing shows the pivoted spring lever catch described in the first and third claims of the Hill patent, and therefore it is difficult to see how the defendants can escape the charge of infringement, even if the Osgoods were the first to invent the Hill buffer.

We come now to the Hayden patent of May 3, 1881, wherein, among other things, is found described an extensible holder attached to a frame supported upon wheels, for the purpose of holding articles of different shapes or sizes. Claim 1 is as follows:

The combination, in a carriage for transporting packages, of a frame supported upon wheels, adapted to a rail, and provided, with an extensible holder connected to the frame, substantially as set forth.

The specification says:

One of the principal difficulties in constructing a carrier of this character has been to adapt it to retain both large and small articles, as well as articles of irregular shape,—a difficulty which I have overcome by connecting the holder, C, flexibly, and in some instances jointedly, to the frame. I have adopted various modes of securing a flexible connection. For instance, I have used a crate or frame or basket, in connection with elastic straps, suspending it from the frame, A, or I have used a holder made of elastic straps. In either case the article, whether large or small, is pressed up against the frame by the elasticity of the holder. I prefer, in most instances, to use, in connection with the holder, an elastic cross-belt, I, Fig. 1, against which the articles are pressed upward, and between which and the bar, E, smaller articles may be inserted and retained.

In defendants' apparatus there is a frame supported by wheels upon a way, and there is connected to this frame a cup-shaped holder, which is made extensible by means of flexible bands passing over small drums having coiled springs within them. When the holder is drawn down, articles can be placed between it and the frame of the carrier, and the springs of the drum, through the flexible straps, press these articles against the frame. Spring drums and flexible connections were well known at the date of the Hayden patent, and they may be regarded as a mechanical equivalent of the elastic straps described by Hayden. But it is urged with much force by defendants that the extensible holder of the Hayden patent must be one capable of extension or expansion independent of the frame or carriage, so as to be capable of receiving larger or smaller articles, while the holder in defendants' car is non-extensible, and consequently has no capacity of adjusting itself to articles of various sizes. It is plain, however, that no such limitation can be properly imposed

upon the Hayden claim. The specification clearly describes a holder extensibly connected to the frame, as well as a holder extensible of itself. It may be that the main object of Hayden was to secure a holder extensible of itself, but, having also described a holder extensible relative to the frame, his claim should not be limited to the former.

The other defense urged is that the Osgoods were the first inventors of extensible holders. This defense is not made out. Whatever crude notions the Osgoods may have had as to a two-part cash-carrier about the time the apparatus was put up in E. P. Osgood's barn, in 1878, I think the subsequent statements of the Osgoods, in the interference proceedings at the patent office, show, beyond question, that it was not until September 1, 1881, that either of them conceived the idea of a two-part extensible carrier. Whatever may have been the decision of the commissioner of patents on this question of priority, I can come to no other conclusion on the present record. Decree for complainant.